### H. H. HALSELL v. The STATE.

*No. 7042.    Decided June 21.*

1. **Practice in Misdemeanor Cases—Change of Venue.**—The codes of this State do not authorize the change of venue in misdemeanor cases.

2. **Aggravated Assault and Battery—Fact Case.**—See the statement of the case for the substance of evidence *held* insufficient to support a conviction for aggravated assault and battery, because insufficient to support the ground of aggravation alleged.

APPEAL from the County Court of Clay. Tried below before Hon. B. F. Turner, County Judge.

The conviction in this case was for an aggravated assault and battery upon the person of J. T. Fields, the infliction of serious bodily injury being the aggravation alleged. The penalty assessed against the appellant was a fine of $200.

J. T. Fields testified for the State, in substance, that on the day alleged in the indictment he went to the defendant's ranch to execute and deliver a promissory note for a certain sum of money he owed the defendant. He found the defendant and several others in the cow lot branding calves. After a time the witness and the defendant went to the house and entered one of the rooms. Defendant then produced pen, ink, and paper, and directed the witness to write a note to A. P. Belcher, reciting that he, witness, was mistaken in stating a few days before that he had seen him, defendant, brand one of the said Belcher's horses. The witness refused to write or sign such a note, stating that to do so would be to falsify a fact. Defendant replied that he would compel witness to write the note, and upon the witness again refusing, he struck and knocked the witness down. He then got on the witness, pressing his knees on the witness's breast, and choking him with his hands. The pressure of the knees on the breast broke one of the witness's ribs, and when he had choked the witness almost to insensibility, the witness agreed to sign the note as required. Witness did not ascertain at once that his rib was broken, but it pained him throughout the remainder of the day. When released by the

defendant the witness mounted his horse and rode to the house of Mr. Cash, about five miles distant. He went to bed at Cash's house, and remained in bed until the following morning, when he went to the town of Henrietta, eleven miles distant. Near Cash's he got in company with John Russell, who was driving a bunch of cattle to Henrietta. The cattle were driven principally through lanes, and witness helped drive them, sometimes galloping his horse. The galloping of the horse aggravated or increased the pain resulting from the broken rib. Dr. Bittick examined witness's wound and told witness that his rib was broken. Witness was taken from Henrietta to his home in a buggy by John Russell, and was confined to his room about six weeks.

Cross-examined the witness stated that he had never told A. P. Belcher that defendant stole one of his, Belcher's, horses. Mr. Belcher asked the witness if he saw defendant brand a certain black horse, and the witness replied to Belcher in the affirmative. Witness admitted that on the morning after the assault he told S. M. Satterfield that he was not much hurt, and upon this point he was corroborated by Satterfield at a later stage of the trial.

T. Cash, the father-in-law of Fields, testified for the State that Fields was unable to do any work for a month or more after he was assaulted by the defendant. He complained often of pain in his side, and had some fever.

William Montgomery testified for the State that soon after the assault upon Fields the defendant told him that he struck Fields because he, Fields, had told lies to him and caused him to treat other men unjustly, and because Fields had accused him of stealing a horse that belonged to Belcher & Babb.

Dr. S. G. Bittick testified for the State that he examined Fields on the day after the alleged assault. He found Fields with a slight fever and a rib broken from the outside. The fracture of the rib did not make a serious, dangerous, or permanent wound. It did not constitute a serious injury according to the witness's understanding of serious injury. He understood "serious injury" to mean an injury involving danger to life. A rib broken as Fields' was broken could not imperil life.

Testifying in his own behalf, the defendant stated that he choked Fields to make him agree to sign a note to Belcher to the effect that he, Fields, was mistaken in his statement to Belcher that defendant had stolen one of Belcher's horse. He did not intend to break Fields' rib or to otherwise do him serious injury. If he broke the rib he broke it by accident. Witness was mad and intended to give Fields a good substantial whipping, but did not intend to kill or do him serious injury.

*R. D. Welborne,* for appellant.

*W. L. Davidson,* Assistant Attorney-General, for the State.

WILLSON, JUDGE.—This conviction is for an aggravated assault and battery, the ground of aggravation alleged being that serious bodily injury was inflicted upon the person assaulted.

Defendant made an application for a change of venue, which application was refused. There is no provision of law which authorizes a change of venue in a misdemeanor case, and the application was properly overruled.

The conviction is not warranted by the evidence, because the evidence shows that the injury inflicted upon the assaulted person was not serious within the meaning of that word as used in the statute. George v. The State, 21 Texas Ct. App., 315.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Judges all present and concurring.